FILED

UNITED STATES DISTRICT COURT
DISTRICT

04 APR -6 PM 4:04

CLERK LAS CRUCES

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,             )
                                      )
        Plaintiff,                    )
                                      )
vs.                                   )     CRIMINAL NO. 03-1471 RB
                                      )
RONALD EDWARD McCALVIN,               )
                                      )
        Defendant.                    )

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion for Judgment of Acquittal (Doc. No. 88) filed on February 23, 2004. Having reviewed the submissions of the parties and the relevant law, the Court finds that the motion is not well-taken and should be denied.

### I. Background

Defendant Ronald Edward McCalvin (hereinafter "Mr. McCalvin") was indicted for (1) Conspiracy to Possess with Intent to Distribute 50 kilograms and more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 21 U.S.C. § 846, and (2) Possession with Intent to Distribute 50 kilograms and more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1))C) and 18 U.S.C. § 2. (Doc. No. 34) On February 20, 2004, the jury returned a guilty verdict on both counts. (Doc. No. 91) Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, Mr. McCalvin seeks a judgment of acquittal on the grounds that the guilty verdict was against the weight of the evidence.

### II. Standard of Review

In considering a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the Court must "view the evidence, both direct and circumstantial, in the



light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime." *United States v. Johnson*, 12 F.3d 1540, 1545 (10th Cir. 1993) (citing *United States v. White*, 673 F.2d 299, 301-302 (10th Cir. 1982)). A district court must give the benefit of the doubt to the Government, "and assume the jury found its evidence, both direct and circumstantial, to be credible." *United States v. Chavez-Palacios*, 30 F.3d 1290, 1294 (10th Cir. 1994). "The jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw inferences from the basic facts to the ultimate facts." *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998). However, "the evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt," and a district court "may not uphold a conviction by piling inference upon inference." *Id.*

## III. Discussion

Title 21, United States Code, Section 841(a), makes it a crime for anyone knowingly or intentionally to possess a controlled substance with the intent to distribute it. At trial, the Government was required to prove that Mr. McCalvin possessed a controlled substance which was, in fact, marijuana; and that Mr. McCalvin possessed at least 50 kilograms of the controlled substance with the intent to distribute it. *See* Court's Jury Instructions, No. 18. (Doc. No. 90) The central issue presented at trial was whether Mr. McCalvin had knowing possession. Gov.'s Stipulated Ex. 2. Knowing possession is an act done voluntarily and intentionally not because of mistake or accident. *See United States v. Delreal-Ordones*, 213 F.3d 1263, 1268 (10th Cir. 2000). While knowledge on the part of Mr. McCalvin cannot be established merely by demonstrating that he was negligent, careless, or foolish, knowledge can be inferred if he deliberately blinded himself to the existence of a fact. *See id.*

2

Construing the evidence in the light most favorable to the Government, the Court finds the Government presented sufficient evidence to allow the jury to conclude that Mr. McCalvin knowingly possessed with intent to distribute 50 kilograms or more of marijuana. At trial, Border Patrol Agent Yvette Haran explained how Mr. McCalvin was initially apprehended. Agent Haran testified that, on April 30, 2003, Mr. McCalvin, along with passenger and Co-Defendant, Victor Montelongo (hereinafter "Mr. Montelongo"), entered the United States Border Patrol checkpoint, located on Highway 54 in Otero County, New Mexico. Gov's Resp. to Def. McCalvin's Mot. for J. of Acquittal; Doc. No. 94 at 2. According to Agent Haran, Mr. McCalvin drove into the checkpoint. *Id.* When Agent Haran encountered the tractor trailer, she stepped up on the running board and inquired as to Mr. McCalvin's citizenship status. *Id.* Agent Haran also asked Mr. Montelongo, who was located in the sleeper compartment, about his citizenship status. *Id.*

During Agent Haran's initial conversation with Mr. McCalvin, she smelled a strong odor of a citrus type air freshener emanate from the sleeper portion of the tractor trailer. *Id.* Agent Haran observed Mr. McCalvin behave abnormally and avoid making eye contact. *Id.* Suspecting Mr. McCalvin and Mr. Montelongo to be transporting contraband, Agent Haran asked and received permission to conduct a canine search of the tractor trailer. *Id.* Agent Haran then referred the tractor trailer to the secondary inspection area. *Id.* Once the tractor was parked at the secondary inspection station, Agent Haran had to ask Mr. McCalvin and Mr. Montelongo, numerous times, to exit the tractor trailer. *Id.*

During the canine inspection, Border Patrol Agent Bill Robinette noted Mr. McCalvin was pacing back and forth and talking in a nervous, animated fashion. Clerk's Mins; Doc. No.

89 at 5. Agent Robinette also testified that Mr. McCalvin continuously re-positioned himself to gain a better vantage point of the canine performing the search. *Id.*

Agent Haran's suspicions bore fruit when, after the canine conducted the search, it alerted the Border Patrol Agents that contraband was hidden near the passenger side door of the tractor trailer. Gov's Resp. to Def. McCalvin's Mot. for J. of Acquittal; Doc. No. 94 at 3. The jury heard testimony that approximately 93 kilograms of marijuana were uncovered beneath the sleeper compartment area of the tractor trailer, the same area where Mr. Montelongo was located when the tractor trailer was encountered at the Border Patrol Checkpoint. *Id.* Mr. McCalvin and Mr. Montelongo were subsequently arrested. *Id.* From Agent Haran's and Agent Robinette's testimonies, the jury had a factual basis to conclude that Mr. McCalvin's behavior at the primary and secondary inspection station contradicted his defense of lack of knowledge.

The jury also could have inferred that Mr. McCalvin's claim of lack of knowledge was inconsistent with the evidence adduced at trial. Juan Quinones, the previous driver of the tractor trailer, testified he had no knowledge of the marijuana in the sleeper compartment and did not place the marijuana in the tractor trailer. *Id.* at 5. Additionally, the evidence established Mr. McCalvin and Mr. Montelongo were the only persons in possession of the tractor trailer after it left the owner's possession. *Id.* at 7.

Moreover, the jury heard testimony from Agent Mike Zivkovic of the Drug Enforcement Administration (DEA) regarding the street value of marijuana seized. Clerk's Mins; Doc. No. 89 at 6. Agent Zivkovic testified that the street value of marijuana in the El Paso area ranges from $250 to $500 per pound. *Id.* In this case, the total street value of the marijuana seized in the El Paso area was approximately $250,000. *Id.* Agent Zivkovic also testified the value of marijuana increases as it passes through the checkpoints. *Id.* According to Agent Zivkovic's testimony, the

4

value of the marijuana could have been worth as much as $300,000 in Michigan, the professed destination of the tractor trailer. Gov's Resp. to Def. McCalvin's Mot. for J. of Acquittal; Doc. No. 94 at 4.

Additionally, the jury could have found Mr. McCalvin's testimony untrustworthy. Mr. McCalvin testified about his prior conviction for theft by check and acknowledged he was able to recognize marijuana. *Id*. at 5. Yet, Mr. McCalvin testified he was unaware of the marijuana hidden in the tractor trailer. *Id*. The evidence also established Mr. McCalvin was not an authorized driver for Mountain Star Transportation because he had previously tested positive for cocaine use and had received too many traffic citations. *Id*. Moreover, when Mr. McCalvin was initially detained, he told Agent Haran that this was his first trip with the company. *Id*. at 2. To the contrary, the evidence revealed that Mr. McCalvin had, in fact, made three prior trips with the company. *Id*. at 3.

With regard to conspiracy, Title 21, United States Code, Section 846, makes it a crime for anyone to conspire with someone else to knowingly possess with intent to distribute 50 kilograms or more of marijuana. At trial, the Government was required to prove: (1) that two or more persons, directly or indirectly, reached an agreement to possess with intent to distribute marijuana; (2) that Mr. McCalvin knew of the unlawful purpose of the agreement; (3) that Mr. McCalvin joined in the agreement with the intent to further its unlawful purpose; and (4) that the overall scope of the conspiracy involved at least 50 kilograms of marijuana. *See* Court's Jury Instructions, No. 22. (Doc. No. 90) "Casual transactions with persons involved in a conspiracy are insufficient to establish" that the defendant was a member of the conspiracy. *United States v. Powell*, 982 F.2d 1422, 1429 (10th Cir. 1992). A defendant's connection with the conspiracy, however, need only be minimal so long as the Government can show that the defendant was a

5

knowing participant. *See id.* As a knowing participant, though, the defendant's actions must have constituted an "essential and integral" step towards the common, illegal goal. *See United States v. Edwards*, 69 F.3d 419, 432 (10th Cir. 1995).

The Court finds that the Government presented sufficient evidence for the jury to infer that Mr. McCalvin was involved in a conspiracy to distribute marijuana. First, the evidence established that Mr. McCalvin and Mr. Gomez, the owner of the tractor, were inside the cab working immediately before the trip began. *Id.* at 8. The jury could have concluded that Mr. McCalvin and Mr. Gomez took a substantial step to effectuate an earlier agreement to distribute marijuana. Second, the jury heard testimony from Officer Andrew Bowen of the DEA about Mr. McCalvin's attempt to show the DEA agents marijuana stash houses after his arrest. Clerk's Mins; Doc. No. 89 at 6. The jury may have found Mr. McCalvin's alleged knowledge of stash houses indicative of an agreement by several unnamed perpetrators to distribute marijuana.

## IV. Conclusion

Mr. McCalvin's motion for judgment of acquittal should be denied. The evidence adduced at trial by the Government provided the jury an adequate factual basis to conclude that Mr. McCalvin knowingly possessed with intent to distribute 50 kilograms or more of marijuana. Additionally, the Government gave the jury sufficient evidence from which it could infer that Mr. McCalvin was a knowing and voluntary member of a conspiracy to traffic narcotics.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Judgment of Acquittal (Doc. No. 88) filed on February 23, 2004, is hereby **DENIED.**

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**